# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

DIANE K.,                                    :
        Plaintiff,                    :
                                      :
        v.                            :        C.A. No. 22-215WES
                                      :
KILOLO KIJAKAZI,                             :
Acting Commissioner of Social Security,      :
        Defendant.                    :

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On September 20, 2019, Plaintiff Diane K, an individual of "advanced age" with past relevant work experience as a certified nursing assistant ("CNA") and newspaper carrier, applied for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. Following two hearings[1] and an adverse determination by an administrative law judge ("ALJ"), Plaintiff moved for reversal of the conclusion that she was not disabled at any relevant time and has asked the Court to remand for an award of benefits or for further proceedings. ECF No. 14. In over fifty pages of briefing, Plaintiff argues that: (1) the ALJ erred by placing too much weight on the testimony of a medical expert, psychologist Dr. Norman Baldwin, because it is not based on substantial evidence and because Dr. Baldwin's opinion was inappropriately elevated over other evidence and addressed matters reserved by the regulations for the Acting Commissioner of Social Security ("Commissioner"); (2) the ALJ erred in finding the medical opinion of the treating resident psychiatrist, Dr. Courtney Deban, only partially persuasive because the finding is not based on substantial evidence and is contrary to applicable regulations;

---

[1] At the first hearing, held on November 6, 2020, the ALJ heard testimony from Plaintiff and a vocational expert but continued the hearing to receive additional medical records. Tr. 63-90. The second hearing was held on April 5, 2021; Plaintiff, a different vocational expert and the expert psychologist, Dr. Norman Baldwin, testified. Tr. 36-61.

(3) the ALJ erred in relying on the state agency expert physician, Dr. Joseph Callaghan, because Dr. Callaghan relied on Plaintiff's statements in the Function Report and he did not see unspecified post-date-last-insured ("DLI") medical records; (4) the ALJ erred in relying (in part) on the state agency expert psychologist, Dr. Ryan Haggerty, because Dr. Haggerty's findings related to matters reserved for the Commissioner; (5) the ALJ erred at Step Two in finding that certain physical impairments were not severe because he failed thoroughly to consider Plaintiff's hearing testimony regarding physical limitations and the harmless error doctrine does not apply to this error; (6) the ALJ erred at Step Five in finding that Plaintiff could perform work at the light exertional level; and (7) the ALJ erred in failing properly to assess Plaintiff's symptoms by relying on her statements on application and in the Function Reports and by discounting her inconsistent testimony at the hearing.  ECF Nos. 14, 19.

The Commissioner has filed a counter motion to affirm.  ECF No. 16.  The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Based on my review of the entirety of the record and in consideration of the parties' briefs and the arguments presented during a hearing in this Court, I recommend that the ALJ's decision be affirmed.

## I.    Background

### A.    Summary of Evidence of Plaintiff's Activities

Based on her alleged date of onset of January 30, 2017, bookended by her DLI of September 30, 2019, the period in issue in this case is the less-than-three-year period from January 30, 2017, through September 30, 2019.  Tr. 15-16.  While the ALJ found that Plaintiff did not engage in substantial gainful employment during this period, Tr. 17, and her employment

record reflects almost no paid work,[2] Tr. 218-73, as the Commissioner points out, and my file review has confirmed, the medical record is replete not only with evidence of Plaintiff's inconsistent-with-disability activities (such as a day trip requiring walking for six hours on cobblestones mid-way through the relevant period and taking a European vacation at the end of the relevant period, Tr. 503, 701),[3] but also with evidence of Plaintiff's statements to various treating sources that during the period in issue she was regularly engaged in activities that replicate the work she had done as a CNA (caring for elderly persons), despite the absence of any evidence in the employment portion of the record that she was paid for this work. See, e.g. Tr. 218-73, 885.

The first such reference appears in a record prepared over a year after January 30, 2017, the date when Plaintiff's disability application alleged that she stopped working as a CNA because she was "laid off." Tr. 277. That is, in March 2018, a primary care treating physician assistant noted Plaintiff's "report[] that she works 6 days/week and does not have time for physical therapy . . . is otherwise feeling well." Tr. 416. A few months after that, in June 2018, an entirely different treating physician, orthopedist Dr. Razib Khaund, noted Plaintiff's report to him that discomfort with her ankle was "much better" because "during the day, [Plaintiff] got off periodically, which is working with her client." Tr. 693. And several months before the end of the period in issue, Plaintiff had her first medication management appointment with Dr. Courtney Deban, a psychiatric resident at Butler Hospital, who noted that Plaintiff "displays a remarkable resiliency evidenced by her ability to function and hold jobs," as well as that "she

---

[2] In 2017, Plaintiff had reported earnings of $856; in 2018 and 2019, there is no income. Tr. 220.

[3] Corroborating her ability to travel for vacations, after the period in issue, Plaintiff also traveled on vacation to New Hampshire. Tr. 722 (per note of September 9, 2020, "reports overall doing well since last visit . . . went to NH for a vacation with her husband").

holds jobs from which [Plaintiff] states she finds purpose and meaning" and that she "<u>now</u> takes care of an elderly couple 5 [days a week], feels very invested in her job."[4]  Tr. 496-500 (emphasis supplied).  Confirming ongoing work, one month after the period in issue ended, Dr. Deban noted that Plaintiff's depression and anxiety had worsened due to conflict with her husband and the loss of her job because "her client died."  Tr. 503.

As reflected in Dr. Deban's notes of Plaintiff's reports to her, Plaintiff's ability to work continued after the period in issue.  For example, in September 2020, Dr. Deban noted, "She has been staying active – does house/yard work, walks dogs, <u>helps take care of a friend's mom.</u>"  Tr. 722 (emphasis supplied).  And in December 2020, Dr. Deban noted, "[Plaintiff] reports overall doing well since last visit. . . . Keeping busy taking care of her husband. . . . <u>Was doing CNA work a few times/mo, but the woman passed away this morning</u>; [Plaintiff] says she feels fine, appropriately empathetic for the family but says the woman was suffering & it was her time."  Tr. 885 (emphasis supplied).

The ALJ's decision relies generically[5] on these "activities," which are starkly inconsistent with Plaintiff's claim of disabling symptoms.  Tr. 25, 27-28.  Further, during the hearing before me, when asked about this evidence, Plaintiff conceded that, if these references to working pertain to the period in issue (which they do), she was not disabled.

**B.     Summary of Medical Evidence**

---

[4] When the ALJ asked Plaintiff to explain Dr. Deban's references to working, Plaintiff testified that the last time she had cared for an elderly client was "[i]n 2016."  Tr. 50.  This testimony is squarely contradicted by the evidence summarized above.

[5] Despite the ALJ's lack of specificity, my detailed recital of these troubling record references to what sounds like work is compelled by Plaintiff's invitation, <u>see</u> *infra*, that the Court do its "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to support [the ALJ's] conclusion."  <u>Burton v. Kijakazi</u>, Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023) (internal quotation marks omitted) (quoting <u>Purdy v. Berryhill</u>, 887 F.3d 7, 13 (1st Cir. 2018) and <u>Rivera v. Kijakazi</u>, No. 3:21-cv-30037-KAR, 2022 WL 4586469, at *3 (D. Mass. Sept. 29, 2022)).  As I find *infra*, these references, together with the balance of this record, is more than adequate to support the ALJ's conclusion.

<u>Mental Health</u>.  For most of the period in issue, the only mental health treatment Plaintiff received was with her primary care group, mostly from a physician assistant or a nurse but beginning in May 2019 with Dr. Irfan Ahmad.  Tr. 387-432.  The physician assistant addressed a broad range of complaints; regarding mental health, she consistently found "normal mood and affect[, h]er behavior is normal."  Tr. 401-02.  After the nurse referred Plaintiff for behavioral health, Tr. 391, 393, Plaintiff saw Dr. Ahmad in May 2019.  He found minimal depression and noted a diagnosis of bipolar disorder "in full remission."  Tr. 426-29.  After the period in issue, Dr. Ahmad continued to note the diagnosis of depression, with bipolar disorder in full remission. Tr. 819, 823.

Three months before the end of the period in issue, Plaintiff initiated out-patient care with a Butler Hospital-based psychiatric resident, Dr. Deban, for medication management.  Tr. 496. At her initial appointment with Dr. Deban (staffed with another physician), prior diagnoses were noted based on Plaintiff's report of depression, obsessive compulsive disorder ("OCD"), post-traumatic stress disorder ("PTSD"), multiple concussions and four prior suicide attempts.  Tr. 496.  Dr. Deban's first mental status examination ("MSE") observations (in June 2019) were largely normal including normal attention.  Her only abnormal findings were the observations on MSE of mood "not great," and "[a]ffect constricted, euthymic, mood incongruent," with only fair judgment and insight and limited word recall ("1/3 word recall at 5 min").  Tr. 498.  Dr. Deban's subsequent treating notes reflect Plaintiff's improvement with treatment.  <u>E.g.</u>, Tr. 492 ("[Plaintiff] reports improvement in her mood"); Tr. 488 ("mood continues to be 'pretty good' and stable; no longer having days where she fees down/depressed").  Dr. Deban never prepared a comprehensive psychiatric evaluation report nor did she perform any clinical testing beyond what is reflected (as described above) in her MSE.

After the end of the period in issue, Plaintiff began therapy with Dr. Caroline Golski, also

at Butler Hospital.  Tr. 505.  Diagnostically, Dr. Golski recorded Plaintiff's report of past suicide attempts but presently no active suicidal ideation.  Tr. 505.  The record does not reflect that Dr. Golski administered any clinical tests of cognitive function.  Dr. Golski's first MSE observations (from November 2019) include anxious mood but "much better now," and "[r]ecalls personal history+recent events," "[a]dequate insight and judgment," and the ability to attend.  Tr. 506.  By early 2020, Dr. Deban noted that "things are pretty good right now," as well as that Plaintiff believed therapy with Dr. Golski "has helped immensely."  Tr. 712.  By mid-2020, Dr. Deban's MSE observations included that Plaintiff was "feeling good," though she was bored [with] the pandemic, with mood "stable- no mood swings," and "spend[ing] her time doing yard work and going to the beach with her daughter & dogs."  Tr. 720.  In July 2020, Plaintiff told Dr. Golski "I'm doing pretty good," with anxiety under good control.  Tr. 769.  Occasionally, Plaintiff's post-DLI MSEs recorded by Dr. Golski reflect negative findings such as inattention, anxiety or even suicidal ideation in response to a specific stressor.  E.g., Tr. 514, 724, 865.  Also well after the relevant period, MSEs recorded by Dr. Golski included: "[c]ognition: c/w prior, some memory deficits likely 2/2 TBI," Tr. 770, 791, although the record does not reflect that Dr. Golski did any testing to corroborate these observations.

Because of her reported history of a traumatic brain injury many years before and her current complaints of memory issues, Plaintiff was referred to a neurologist.  Tr. 712.  In March and July 2020, Plaintiff was examined by a neurologist, Dr. Kathleen Kroessler.  Tr. 578-600.  Dr. Kroessler noted an initial diagnosis of "mild cognitive impairment so stated," Tr. 581 (emphasis supplied), but made entirely normal findings on physical examination and specifically found that Plaintiff's memory and attention were normal.  Tr. 580.  Plaintiff's EEG was benign and her brain MRI was normal, so Dr. Kroessler prescribed no treatment but suggested follow up in six months.  Tr. 597-98.

Physical Health.  As reflected in the medical record, Plaintiff's principal medically diagnosed physical impairment was an arthritic condition in her hands.  During 2018 (inside the period in issue), Plaintiff had surgery on one of her hands to address it.  Tr. 362-63, 619-20. After the surgery, there is no evidence of any need for follow up treatment.  When Plaintiff returned to the same hand surgeon in 2020 to have a similar procedure on her other hand, his notes reflect that Plaintiff was pleased with the result of the first surgery and that the condition was having no impact on motion in that hand.  Tr. 637-38, 641.  The second hand surgery was in June 2020 and, by July 2020, Plaintiff was doing very well, with good motion and manageable pain.  Tr. 599-600.  In Plaintiff's Function Report, she left blank the check-box for an impairment or condition adversely impacting her ability to use her hands.  Tr. 314.

Plaintiff's treatment for other physical complaints is reflected in appointments with an orthopedist, Dr. Khaund, for an array of issues, including Achilles tendon pain, knee pain, and foot pain.  For the Achilles, Dr. Khaund observed normal gait, mild sensitivity, negative straight leg-raise test and normal x-rays; he prescribed a boot and physical therapy; two months after the first appointment, Dr. Khaund's notes reflect no further complaints about Plaintiff's Achilles. Tr. 688-696.  Later in 2018, plaintiff returned to Dr. Khaund complaining of knee pain; on examination he found full range of motion with some "discomfort" and mild degenerative changes on x-ray; he prescribed exercise, ice, the wearing of good shoes, arch support and Ibuprofen.  Tr. 697-700.  In November 2018, Plaintiff returned to Dr. Khaund complaining that her foot was painful and swelling after a day trip during which she walked for six hours on a cobblestone path.  Tr. 701.  He prescribed use of a CAM walker and exercise with no follow up. Tr. 704.

On application, Plaintiff alleged that her ability to work was adversely impacted only by mental health conditions.  Tr. 277.  In her Function Report, Plaintiff specifically indicated that

she has no impairment adversely impacting her ability to use her hands and to lift, sit, stand or walk, and that she retained the ability to walk "2 miles," with rests every five to ten minutes.  Tr. 314.  The Function Report completed by Plaintiff's daughter is consistent; the daughter wrote that the only condition affecting Plaintiff's ability to work is "bipolar disorder [that] makes her manic and sometimes she can't even leave the house."  Tr. 293-300.

### C.    Administrative Travel of Plaintiff's Claim

On application, Plaintiff alleged disability during the period in issue based only on the alleged mental impairments of bipolar disorder, with "manic depression," OCD, PTSD, and generalized anxiety disorder.  Tr. 277.  The absence of physical impairments contributing to her alleged inability to work was confirmed by the two Function Reports that Plaintiff and her daughter filled in and signed, which allege that manic depression makes it hard to get up and leads to suicidal thoughts and that her memory and interest in socializing are not what they used to be.  Tr. 293-300, 309-16.  Materially inconsistent with these sworn statements is Plaintiff's testimony at the two hearings before the ALJ that she was significantly limited by an array of physical impairments, including bursitis in the knee, tendonitis in the feet, ankle pain, knee pain, low back pain, hip pain, hand issues that required surgery, Raynaud's disease and "mini seizures."  Tr. 45, 76-88.  At the second ALJ hearing, Plaintiff testified that she had recently been to Butler Hospital due to serious suicidal ideation, Tr. 43, which is contradicted by the treating record.  Tr. 751-53 (Butler Hospital record for appointment prior to ALJ hearing reflects "doing very well . . . [n]o recent episodes of passive SI").  At the same hearing, Plaintiff testified that she sees only family and has no friends, Tr. 75, while in her Function Report, Plaintiff inconsistently reported that she has a "good friend who listens phone or visiting."  Tr. 313.

Based on Plaintiff's medical records and the other evidence of record, the ALJ carefully considered the impact of all of Plaintiff's alleged impairments, mental and physical, including

not just what she alleged but also IBS, GERD, urge incontinence, obesity,[6] mild cognitive

impairment and late effects of traumatic brain injury ("TBI").  Tr. 18-19.  In making his decision,

the ALJ relied on the record; the prior administrative findings of the non-examining physician

expert at the reconsideration phase, Dr. Callaghan; the opinions of the testifying psychologist

expert, Dr. Baldwin; (in part) on the prior administrative findings of the non-examining

psychologist expert at the initial phase, Dr. Haggerty; and (in part) on the opinion of Plaintiff's

treating psychiatrist, Dr. Deban.  He considered Plaintiff's subjective statements but discounted

her hearing testimony due to its inconsistency with Plaintiff's statements in the Function Report

and to medical sources, as well as with the balance of the record.  Based on his analysis, the ALJ

found that Plaintiff's only severe impairment was depression and that she retained the RFC[7] to

perform a full range of work at all exertional levels with nonexertional limits on remembering/

understanding and attention/concentration, based on which she could perform only simple

unskilled work.  Tr. 15-30.  In reliance on a vocational expert, the ALJ found available work that

Plaintiff could do.  Following the Appeals Council's denial of review, the ALJ's conclusion that

Plaintiff was not disabled at any time between the date of alleged onset through her DLI became

the final decision of the Commissioner.  This appeal followed.

## II.    **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do

more than merely create a suspicion of the existence of a fact and must include such relevant

---

[6] Plaintiff has not challenged the ALJ's Step Two determination that IBS, GERD, urge incontinence, and obesity were non-severe impairments that did not cause more than minimal limitations on her ability to work during the period in issue.  Tr. 18-20.  These conditions will not be discussed further in this report and recommendation.

[7] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30.  The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Hum. Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez, 647 F.2d at 222).

III.    **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

A.    **The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 404.1520(a)(4)(v).  The claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

### B.    Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5).

11

Since the recent revision to the regulations, medical opinions produced by state agency medical consultants are referred to as "prior administrative medical findings." Elizabeth L. v. Kijakazi, C.A. No. 23-00008-WES, 2023 WL 5035123, at *7 (D.R.I. Aug. 8, 2023), adopted by text order, (D.R.I. Aug. 24, 2023). The regulations now require that the ALJ "must" consider persuasiveness of such findings and articulate their consideration under 20 C.F.R. § 404.1520c(b) because the medical consultants making those findings are "highly qualified and experts in Social Security disability evaluation." Id. at *8. Such prior administrative findings may not be disregarded as "inherently neither valuable nor persuasive" pursuant to 20 C.F.R. § 404.1520b(c)(3). Id. Similarly, testifying medical experts are specialists selected by the Social Security Administration ("SSA") to be available on the request of an ALJ for an impartial medical/psychological opinion; these experts have familiarity "with applicable SSA regulations and other rules" and are randomly assigned to specific cases based on medical specialty. SSA, Medical Expert Handbook[8] at 1 n.3, 5, 8-9 (Aug. 2017 ed.); see SSA, HALLEX I-2-5-32 - Medical Experts.[9] These testifying experts are qualified to give expert opinions based on their medical/psychological knowledge in their area of specialty, their knowledge of SSA's rules, a file review and observations of the claimant during the hearing; such opinions may relate to such matters as the severity of impairments, residual function capacity, the ability to perform the physical and mental demands of work, whether an impairment meets or medically equals a listing, and the mental functional capacity of a claimant in the four broad functional areas

---

[8] As the Medical Expert Handbook makes clear, the ALJ "will not rely on [a medical expert's] testimony alone to make his or her decision about disability or to make medical findings that go into that decision," but instead "will consider [the medical expert's] testimony, along with the other evidence in the case record." Hill v. Kijakazi, Civil Action No. 1:22-00064-N, 2022 WL 14915581, at *10 n.20 (S.D. Ala. Oct. 26, 2022) (internal quotation marks omitted) (quoting SSA, MEDICAL EXPERT HANDBOOK 10, (Aug. 2017 ed.), https://www.ssa.gov/appeals/public_experts/Medical_Experts_(ME)_Handbook-508.pdf).

[9] SSA, HALLEX HEARINGS, APPEALS, AND LITIGATION LAW MANUAL I-2-5-32 - Medical Experts (last updated Aug. 29, 2014), https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-32.html.

pertaining to mental disorders.  See SSA, Medical Expert Handbook at 9, 16-17, 33.  At the ALJ

hearing, the claimant's counsel must have the opportunity to object to or challenge the testifying

expert's credentials or expertise and to cross examine the expert regarding any expert opinions

the expert may present or any other matter in the expert's area of expertise.  SSA, HALLEX I-2-

6-70 - Testimony of a Medical Expert (ALJ must allow claimant and representative to state

whether they have any objections to medical expert testifying and address any such objections at

the hearing; ALJ must also allow claimant and representative right to question medical expert

fully on any pertinent matter within medical expert's area of expertise).  A claimant who is

afforded the opportunity to ask a testifying medical expert clarifying questions and declines to do

so waives any argument that the expert's testimony is unclear or ambiguous.  Kaylee M. v.

Kijakazi, C.A. No. 21-135JJM, 2022 WL 1261398, at *4 (D.R.I. Apr. 28, 2022).

### C.    Step Two Determination

The disability analysis ends at Step Two if the claimant's medically determinable

impairments have not been "severe" for a consecutive twelve-month period.  20 C.F.R. §

404.1520(a)(4)(ii).  "An impairment . . . is not severe if it does not significantly limit [the

claimant's] . . . mental ability to do basic work activities."  20 C.F.R. § 404.1522(a).  Basic work

activities include "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of

judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and

[d]ealing with changes in a routine work setting."  20 C.F.R. § 404.1522 (b)(3)-(6).  Non-

severity is found where the medical evidence establishes no more than a slight abnormality that

would have only a minimal effect on an individual's ability to work. SSR 85-28, 1985 WL

56856, at *2 (Jan. 1, 1985).  Step Two is a screening device used to eliminate applicants "whose

impairments are so minimal that, as a matter of common sense, they are clearly not disabled from

gainful employment."  McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1122 (1st

Cir. 1986); Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016),

adopted sub nom. Burge v. Berryhill, 2017 WL 435753 (D.R.I. Feb. 1, 2017).

At Step Two, Plaintiff has the burden to show that she had a "medically determinable"

physical or mental impairment(s) that significantly limited her ability to do basic work activity at

the relevant time.  Luz R. v. Saul, C.A. No. 19-00307-WES, 2020 WL 1026815, at *6 (D.R.I.

Mar. 3, 2020), adopted by text order, (D.R.I. Mar. 30, 2020).  An error at Step Two does not

require remand as long as the sequential analysis continues, and limitations caused by symptoms

related to the overlooked impairment are incorporated into the RFC.  White v. Colvin, No. 14-

171 S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015); see Courtemanche v. Astrue, No. CA

10-427M, 2011 WL 3438858, at *15 (D.R.I. July 14, 2011) (any error at step two is harmless

"absent any specific showing by Plaintiff of any particular functional limitations attributable to

[the impairment] that the ALJ failed to consider in making his RFC finding"), adopted sub nom.

Courtemance v. Astrue, 2011 WL 3421557 (D.R.I. Aug. 4, 2011).

### D.    Claimant's Subjective Statements

A reviewing court will not disturb a clearly articulated credibility finding based on

substantial supporting evidence in the record.  See Frustaglia v. Sec'y of Health & Hum. Servs.,

829 F.2d 192, 195 (1st Cir. 1987) (per curiam).  Guidance for the evaluation of the claimant's

statements regarding the intensity, persistence and limiting effects of subjective symptoms is

provided by SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017), which directs the ALJ to

consider the entire case record, including the objective medical evidence, the individual's

statements, statements and other information provided by medical sources and other persons, and

any other relevant evidence, as well as whether the subjective statements are consistent with the

medical signs and laboratory findings.  Id. at *2-5.  As the First Circuit recently emphasized, in

the absence of direct evidence to rebut a claimant's testimony about subjective symptoms, such

statements should be taken as true.  Sacilowski, 959 F.3d at 441; Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021).  That is, if proof of disability is based on subjective evidence and a credibility determination is critical to the decision, the subjective statements must either be explicitly discredited or the implication of lack of credibility must be so clear as to amount to a specific credibility finding.  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

## IV.  **Analysis**

During the hearing before me, mindful of the sheer number of issues raised by claimant, I asked Plaintiff's counsel to articulate her best claim.  See Sacilowski, 959 F.3d at 435 (each side's attorney asked to present their two strongest arguments).  In response, Plaintiff asked the Court to focus on the overall evidence of record, which she contends compels the determination that a "reasonable mind" could not have concluded on the evidence before the ALJ that Plaintiff failed to prove an inability to work.  See Melendez Salgado v. Sec'y of Health & Hum. Servs., 959 F.2d 230, 1992 WL 63520, at *2 (1st Cir. 1992) (Table).  That is, Plaintiff argues that a remand for an award of benefits (and if not, for further proceedings) should follow as long as the Court does its "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to support [the ALJ's] conclusion."  Burton v. Kijakazi, Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023) (internal quotation marks omitted) (quoting Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) and Rivera v. Kijakazi, No. 3:21-cv-30037-KAR, 2022 WL 4586469, at *3 (D. Mass. Sept. 29, 2022)).  This focus does not advance Plaintiff's cause.  Having carefully and thoroughly reviewed the entirety of the record as summarized above, I find that a reasonable mind would readily accept that the substantial evidence in the record of this case is more than adequate to support the ALJ's

conclusion. Further, based on the analysis that follows, I find no legal errors and recommend that the Court affirm the ALJ's well supported and legally correct decision.

My analysis begins by setting aside the unfounded arguments that Plaintiff abandoned during the hearing before me, starting with Plaintiff's concession that Elizabeth L. is correctly decided and that the regulation providing that "[s]tatements on issues reserved to the Commissioner" is evidence that is neither valuable nor persuasive, 20 C.F.R. § 404.1520b(c), does not impact the appropriateness of the ALJ's consideration of the prior administrative findings of Dr. Haggerty and the expert testimony of Dr. Baldwin. This also resolves Plaintiff's incorrect contention that the ALJ erred in inappropriately "elevat[ing]" the prior administrative findings and the testifying expert opinion.[10]  Thus, it is now effectively undisputed that the ALJ appropriately complied with the applicable regulations and guidance regarding such evidence. See Elizabeth L., 2023 WL 5035123, at *8 (ALJ "must" consider medical consultants' findings because they are "'highly qualified and experts in Social Security disability evaluation'"); Adria H. v. Comm'r of Soc. Sec., No. 2:21-cv-00899-JRC, 2022 WL 73870, at *5 (W.D. Wash. Jan. 7, 2022) (error for ALJ to reject examining doctors' assessed limitation that claimant would be limited in completing a normal workday and workweek because it "is a legal conclusion reserved to the Commissioner"); SSA, Medical Expert Handbook at 1 n.3, 5, 8-9 (testifying medical experts may be expected to have familiarity "with applicable SSA regulations and other rules"). I recommend that these arguments be rejected. See Chad B. v. Kijakazi, C.A. No. 22-228JJM, 2023 WL 6867120, at *2 (D.R.I. Oct. 18, 2023), adopted by text order, (D.R.I. Nov. 2, 2023).

---

[10] I decline to struggle with Plaintiff's undeveloped argument that the ALJ's observation that Dr. Baldwin is a "specialist opining in his field of expertise," Tr. 26, while failing to mention that Dr. Deban is a psychiatrist (albeit a resident), somehow amounts to error requiring remand. See Jonathan G. v. Kijakazi, C.A. No. 22-107MSM, 2022 WL 17580663, at *3 (D.R.I. Dec. 12, 2022), adopted, 2023 WL 4077849 (D.R.I. May 3, 2023) (no error in ALJ's failure to mention anything other than supportability and consistency of medical opinions; no need to highlight such facts as length of treating relationship).

Also, during the hearing before me, Plaintiff was unable to support her contention that there is *per se* error[11] if the state agency consultants, the testifying psychological expert or the ALJ considers a claimant's own statements and the statements of others submitted in support of the application by the claimant in the Function Reports.  See <u>Santiago v. Sec'y of Health & Hum. Servs.</u>, 944 F.2d 1, 5 (1st Cir. 1991) (appropriate for ALJ to consider "historical or subjective statements made in the application or other documents provided by the agency").  Nor could she. The statements in the Function Report are written on an SSA form that is signed by the claimant and submitted to SSA in support of the application.  At the top of the form, there is the following prominent warning:

> *Anyone who makes or causes to be made a false statement or representation of material fact for use in determining a payment under the Social Security Act, or knowingly conceals or fails to disclose an event with an intent to affect an initial or continued right to payment, commits a crime punishable under Federal law by fine, imprisonment, or both, and may be subject to administrative sanctions.*

Tr. 309.  In this case, the two Function Reports submitted in support of Plaintiff's claim squarely contradict Plaintiff's testimony at the hearing regarding her symptoms and their severity. Accordingly, I do not credit Plaintiff's argument that the ALJ's RFC and Dr. Callaghan's prior administrative findings are fatally tainted because each of them relied on the Function Report responses signed and submitted to SSA by Plaintiff and her daughter in support of Plaintiff's application.  See <u>Santiago</u>, 944 F.2d at 5 (ALJ is entitled "to rely upon claimant's own

---

[11] Plaintiff's written argument asks the Court to classify testimonial statements made during a hearing as "hot" and statements written and signed in advance for submission in support of the application in the Function Report as "cold."  She contends that it is *per se* error requiring remand if an ALJ discounts "hot" statements because they are contradicted by "cold" statements, as well as that the prior administrative findings of a state agency consultant (like Dr. Callaghan) who relies on "cold" statements (necessarily because the file review is performed before the testimonial hearing) do not amount to substantial evidence.  I utterly reject such a *per se* rule, not only because it would undermine the orderly administrative process used by SSA, which is reliant on claimants' truthful written statements to assemble the record and procure appropriate medical analyses of claims, but also because it flies in the face of fundamental principles as reflected for example in Fed. R. Evid. 801(d)(2) (prior statement of party is admissible and is not hearsay).

statements of her functional limitations"). I recommend that the Court reject this argument.

That leaves only Plaintiff's arguments that: Dr. Baldwin's expert testimony is not based on substantial evidence; the ALJ erred in finding Dr. Deban's opinion only partially persuasive; Dr. Callaghan's prior administrative findings are not substantial evidence because of medical records that Dr. Callaghan did not see; the ALJ erred in discounting Plaintiff's subjective statements; and the ALJ's Step Five reliance on jobs at the light exertional level automatically drops the RFC to the light exertional level compelling an award of benefits. None has merit. I address each in turn.

Dr. Baldwin. Plaintiff's first argument is that Dr. Baldwin's statement at Tr. 48 – "[i]t appears that in Dr. Golski's notes in 22F, 18F, and was in Dr. Deban's notes in 7F, that the claimant has improved in function from 2019 through 2020 and '21" – should be ignored because the exhibits cited to are lengthy. Having thoroughly reviewed every page of each of the cited exhibits, I find this argument to be groundless and that the cited exhibits are appropriately and accurately summarized by Dr. Baldwin's testimony. Second, Plaintiff lists thirteen record citations and argues that each of them undermines Dr. Baldwin's testimony regarding "improv[ement]." Tr. 47-48. This argument fails because, as confirmed by my review of every page, the pages Plaintiff cites do reflect improvement and constitute some of the substantial evidence affirmatively supporting Dr. Baldwin's opinion. See, e.g., Tr. 503 (on October 30, 2019, after two-month hiatus without treatment and before start of therapy, claimant feeling "lousy" due to situational stress); Tr. 751-52 (after almost year of therapy, Plaintiff "doing pretty well"; "[p]rotective factors cited by [Plaintiff] include a supportive daughter and job with clients depending on her"); Tr. 778 ("overall she feels that she had a good 2 weeks").

The balance of Plaintiff's challenges to Dr. Baldwin boil down to her contention that this Court should perform its own interpretation of the evidence – for example, cherry-picking

isolated instances where Plaintiff's anxiety increased and she ruminated about suicide – to reach a different conclusion from that reached by Dr. Baldwin.  E.g., compare Tr. 506-09 (in November 2019, Plaintiff in "much better . . . overall spirits"), with Tr. 503-04 (in October 2019, anxiety increases due to issues with husband and death of client but "explicitly denies suicidal intent").  As the Commissioner contends, this amounts to a thinly veiled request for the Court to reweigh the evidence, which is inappropriate; I decline the invitation.  Mosconas v. Saul, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020) (court cannot reweigh the evidence and supplant ALJ's reasonable determinations); Elizabeth L., 2023 WL 5035123, at *6 (court should not entertain "improper request . . . to reweigh the evidence in her favor").  I find that the ALJ was faced with conflicting medical opinions and committed no error in exercising his discretion in relying on substantial evidence to resolve that conflict "in favor of Dr. Baldwin's expert testimony."  Leonard P. v. Saul, C.A. No. 19-418-WES, 2020 WL 1181598, at *8 (D.R.I. Mar. 12, 2020), adopted, 2020 WL 1862970 (D.R.I. Apr. 14, 2020).

Dr. Deban.  The ALJ found the RFC opinion signed on November 4, 2020, by the psychiatric resident, Dr. Deban, partially persuasive because the level of severity it reflects for certain functions clashes with other evidence in the record.  Tr. 26.  I find that this finding is well supported by substantial evidence.  For example: Dr. Deban's opinion that Plaintiff's attentional ability was markedly impaired is contradicted by her own treating note at Tr. 498 ("attention [within normal limits]"); Dr. Deban's opinion that Plaintiff's abilities to work with others and with supervisors are markedly impaired is contradicted by Plaintiff's statements in the Function Report at Tr. 314-15 (no problems in getting along with family friends neighbors and authority figures); Dr. Deban's opinion that Plaintiff's ability to complete a normal workday is markedly impaired is contradicted by Dr. Deban's treating note at Tr. 491 ("now takes care of elderly couple 5 d[ays]/w[ee]k"); and Dr. Deban's opinion that Plaintiff is markedly impaired in her

ability to travel in unfamiliar places is contradicted by Dr. Deban's notations at Tr. 503, 760, regarding Plaintiff's vacations to Europe and New Hampshire. Overall, the ALJ had ample support for his finding that the extreme aspects of Dr. Deban's opinion are squarely contradicted by her treating notes, which consistently reflect Dr. Deban's finding that "[Plaintiff] displays remarkable resiliency evidenced by her ability to function and hold jobs." E.g., Tr. 499.

Plaintiff nevertheless challenges the ALJ approach to the Deban opinion as so tainted as to require remand based on several alleged errors. First, she asks the Court to focus on Dr. Baldwin's misstatement that a certain treating note that reflects that Plaintiff "doing well" was signed by Dr. Golski when it was actually signed by Dr. Deban. While this is certainly a mistake by Dr. Baldwin, it does not undermine the ALJ's finding that the markedly impaired findings in the Deban opinion clash with the treating record, no matter who signed this particular record. Second, Plaintiff asks the Court to ignore the ample evidence during the period in issue that supports the ALJ's treatment of the Deban opinion and instead to examine a note signed by Dr. Golski in March 2021 (more than a year and a half after the end of the period in issue) to find that it is consistent with the Deban opinion so that remand is required for it to be considered. Because this note was in the record reviewed by Dr. Baldwin, who confirmed during his testimony that he was aware of its content and relied on it in forming his opinion,[12] this argument falls flat. Last, Plaintiff criticizes the ALJ's reliance on Dr. Baldwin's testimony to find that Dr. Deban had not performed a "comprehensive evaluation to fully assess functioning." Tr. 26. The problem with this argument is that Dr. Baldwin is right: Dr. Deban's notes reflect one observation on MSE showing mixed results regarding memory – "cognition 1/3 word recall at

---

[12] Dr. Baldwin testified about this March 3, 2021, note written by Dr. Golski about Plaintiff having had a "difficult week" because she gave her husband and son money needed for the household to buy marijuana. Tr. 865. According to Dr. Baldwin, "more frequently mentioned by Dr. Golski is periodic and episodic symptoms of depression . . . [o]ne example given was when her husband and her son wanted to borrow money to buy some THC." Tr. 52. That is, Dr. Baldwin's expert opinion took this precise record into account.

5min w/ 3/3 registration" – otherwise, there is no other testing of cognitive function, certainly there is no "comprehensive evaluation." Further, as Dr. Baldwin noted, Tr. 49, neurological testing to determine whether Plaintiff suffered from significant cognitive impairments was not done by Dr. Deban, but <u>was</u> explored by the neurologist, who found no abnormalities. Tr. 578-97. More fundamentally, Plaintiff's argument fails because "understanding and memory" is a category where Dr. Deban did <u>not</u> find marked impairment. Tr. 726 (Plaintiff's ability to remember "moderately limited" and ability to understand and remember both simple and detailed instructions "not significantly limited"). That is, this aspect of Dr. Deban's opinion is consistent with (if not less restrictive than) Dr. Baldwin's opinion, which was adopted by the ALJ in the RFC. <u>See</u> Tr. 53. Thus, the ALJ did not reject but accepted Dr. Deban's opinion that Plaintiff was moderately restricted in her cognitive function. I find that the ALJ's approach to Dr. Deban's opinion, including the ALJ's finding that it is persuasive at least to that extent, is well supported by substantial evidence.

<u>Dr. Callaghan</u>. Plaintiff's attack on Dr. Callaghan (the file-reviewing expert who opined on physical limitations) rests on her undeveloped contention that Dr. Callaghan "did not have vast swaths of much more detailed records." ECF No. at 32. This vague argument fails because, with Plaintiff's DLI falling well prior to Dr. Callaghan's file review, this is a case where the state agency consultant <u>did</u> see all of the records reflecting treatment during the period in issue. To the extent that Plaintiff actually mentions any specific post-file-review record in support of this argument, she relies only on those connected with the post-DLI 2020 hand surgery, which Dr. Callaghan did not see. However, these post-file-review records simply confirm that Plaintiff has no lingering limitations from the hand surgery that was performed in 2018, corroborating Dr. Callaghan's finding that there were "[n]o difficulties using hands . . . [and n]o objective evidence to support limited manipulation." Tr. 104. Thus, this argument fails in the face of the well-

settled principle that a state-agency opinion is not irrelevant merely because the expert was not

privy to updated medical records that are consistent with those the expert did see; to hold

otherwise "would defy logic and be a formula for paralysis." Vanessa C., 2021 WL 3930347, at

*5; Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655, at *8 (D.R.I. Nov. 22, 2019),

adopted by text order, (D.R.I. Dec. 13, 2019).  I find no error in the ALJ's reliance on Dr.

Callaghan, no error at Step Two[13] and no RFC error in the finding of no exertional or

manipulative limits.

      Subjective Statements.  The Court need not linger on Plaintiff's argument that the ALJ

erred in failing to accept her subjective description of her symptoms during her hearing

testimony.  With ample evidence squarely contradicting these statements, starting with Plaintiff's

own statements in the Function Report, as well as her many statements to treating sources

regarding her activities, as summarized in section I *supra*, I find that the ALJ's treatment of these

statements complies with Sacilowski, 959 F.3d at 441, and SSR 16-3p, as well as that the ALJ's

finding is well supported by substantial evidence.  That is, faced with sharply conflicting

narratives from Plaintiff, the ALJ was free to choose which version to credit, and he reasonably

chose the statements that were more consistent with Plaintiff's benign treatment records and

---

[13] This is a case in which the ALJ continued the sequential analysis after finding Plaintiff's physical impairments to be non-severe at Step Two.  At the RFC phase, the ALJ expressly addressed Plaintiff's physical complaints and I find no error tainting that analysis. Tr. 22-23, 26, 27.  Thus, if the Court disagrees with my finding of no Step Two error, any error that may be found is harmless. See, e.g., Beninson v. Berryhill, No. 17-cv-371-PB, 2019 WL 831115, at *7 (D.N.H. Feb. 4, 2019), adopted, 2019 WL 830485 (D.N.H. Feb. 21, 2019) ("Because the ALJ proceeded past step 2, even if he erred by failing to find that [claimant's] degenerative disc disease was a severe impairment, any error was harmless"); Guzman v. Berryhill, C.A. No. 16-556 WES, 2018 WL 1620926, at *7 (D.R.I. Apr. 2, 2018) ("any Step 2 error is harmless because the ALJ resolved that Step in Plaintiff's favor and considered the combined effect of his severe and non-severe impairments at Steps 3 and 4 of the sequential evaluation process").  In making this recommendation, I reject Plaintiff's argument, which she was unable to explain when challenged during the hearing before me, that the First Circuit's decision in Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) ("remand is not essential if it will amount to no more than an empty exercise"), is somehow transgressed by the post-Ward line of decisions that apply its holding in the specific context of a Step Two error that is effectively cured by an ALJ's error-free analysis at the RFC phase.

activities.  See Rodriguez Pagan, 819 F.2d at 3.

      Step Five Finding that Light Work Jobs Are Available.  Plaintiff's final argument focuses on Step Five of the sequential process, at which the "burden of going forward with the evidence shifts to the Social Security Administration."  Tr. 17 (citing 20 C.F.R. §§ 404.1512 and 404.1560(c)).  Despite finding no exertional limits, Tr. 22, the ALJ relied at Step Five only on jobs at the light exertional level to find that Plaintiff could perform work.  Tr. 28-30, 59.  During the hearing, the ALJ confirmed with the vocational expert that these light jobs could be performed by someone like Plaintiff with no exertional limitations.  Tr. 60-61.  Ignoring this testimony, Plaintiff argues that an RFC finding of no exertional limits must downshift to a light exertional RFC if, at Step Five, the ALJ relies on testimony from a vocational expert whose opinion lists only light jobs as examples of available work.  According to Plaintiff, because of her age, a light exertional RFC would compel a Grid-rule-based finding of disabled.

      This Court rejected  a conceptually similar argument in Thomas P. v. Berryhill, C.A. No. 17-337-WES, 2018 WL 4629249 (D.R.I. Sept. 27, 2018).  Thomas P. holds that the law does not require the RFC to be "adjusted downward" to match the exertional level of the jobs identified at Step Five.  Id. at *5.  This Court explained that to hold otherwise would clash with the reality that "[t]he RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy."  Id. (citing Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 36 (6th Cir. 2010)).  Guided by Thomas P., I find no error.  Therefore, I do not recommend remand based on the vocational expert's testimony, which listed only jobs at the light exertional level.

## V.    Conclusion

      Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be DENIED and the Commissioner's Motion to Affirm her

Decision (ECF No. 16) be GRANTED.  Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 18, 2023

24